# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

---

| | |
|---|---|
| Omar M., | Case No. 18-cv-2646 (JNE/ECW) |
| Petitioner, | |
| v. | **REPORT & RECOMMENDATION** |
| William Barr,[1] et al., | |
| Respondents. | |

---

This matter is before the Court upon Omar M.'s ("Petitioner") Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 (Dkt. No. 1) ("Petition") asking the Court to release him from immigration detention or to order a bond hearing to determine if he is a danger to the public or a flight risk. This case has been referred to the undersigned United States Magistrate Judge for a report and recommendation pursuant to 28 U.S.C. § 636 and Local Rule 72.1. For the reasons discussed below, the Court recommends that the Petition be granted in part and denied in part.

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), William Barr, United States Attorney General, is automatically substituted as a party in place of Jefferson Beauregard Sessions, III, former Attorney General.

# I.    BACKGROUND

## A.    Petitioner's Immigration Background

Petitioner is a native and citizen of Somalia.  (Dkt. No. 1-2, Ex. B at 1.)  He entered the United States on June 26, 1999[2] as a refugee.  (Dkt. No. 9 ¶ 4.)  Petitioner adjusted his status to a Lawful Permanent Resident, retroactive to his date of admission to the United States.  (*Id.*)  Petitioner's parents were both naturalized—in 2003 and 2006—when Petitioner was an adult.  (Dkt. No. 1-2, Ex. B at 2.)  Petitioner's spouse is also a U.S. citizen, as are his five children.  (Dkt. No. 1-2, Ex. I, Immigration Judge ("IJ") Decision at 5.)

## B.    Petitioner's Criminal Record

Petitioner has been arrested or cited for numerous violations between 2005 and 2017.  (Dkt. No. 9 ¶¶ 5-14.)  Many of these violations were dismissed or involved petty offense traffic citations and violations.  (*Id.* ¶¶ 6-8, 10-12, 14.)  Two of Petitioner's violations are relevant to his removal proceedings.

First, on February 8, 2008, Petitioner pled guilty to one count of Possession of Cathinone ("Khat") in violation of 21 U.S.C. § 844(a).  (Dkt. No. 9-1, Ex. 4 at 1.)  Second, on June 6, 2017, Petitioner pled guilty to two counts of Felony Insurance Fraud—Employment of Runners in violation of Minn. Stat. § 609.612, subd. 2.  (*Id.*, Ex. 5.)  For the insurance fraud violation, Petitioner was sentenced to 364 days to run

---

[2]    Petitioner may have arrived in the United States on June 26, 1996 (*see* Dkt. No. 1-2, Ex. I, IJ Decision at 3), but the exact date has no bearing on this matter.

concurrently.  (*Id.* at Sentence (ECF page 43).)  Execution of the sentence was stayed for two years.  (*Id.*)

## C.    Petitioner's Removal Proceedings

On September 17, 2011, Immigration and Customs Enforcement ("ICE") served Petitioner with a Notice to Appear and charging him with removability.  (Dkt. No. 1-2, Ex. A at 1.)  Petitioner's removal proceedings were set for hearing before the immigration court to take place on January 10, 2012.  (Dkt. No. 1-2, Ex. E.)  Petitioner failed to appear, and a hearing was held *in absetentia*.  (Dkt. No. 1-2, Ex. F.)  IJ Kristin M. Olmanson ordered Petitioner removed to Somalia.  (*Id.*)

Several years later, Petitioner moved to reopen his removal proceedings.  (Dkt. No. 9-1, Ex. 8.)  Petitioner alleged he did not receive the notice of the 2012 hearing.  (*Id.*)  IJ Olmanson noted that this allegation was corroborated by the fact that the immigration file reflected that the notice was returned to the immigration court undelivered, and ordered the removal proceedings reopened on July 25, 2016.  (*Id.*)

Petitioner was detained by ICE on June 8, 2017, when he was released from criminal custody after he pled guilty to the insurance fraud violations.  (Dkt. No. 9 ¶¶ 13, 28.)  On June 14, 2017, ICE charged Petitioner with removability based on his 2017 guilty plea pursuant to 8 U.S.C. § 1 227(a)(2)(A)(iii), as an alien convicted of an aggravated felony (an offense involving fraud or deceit in which the loss to the victim exceeded $10,000).  (Dkt. No. 9 ¶ 18; Dkt. No. 9-1, Ex. 9.)  IJ Olmanson held a hearing on June 28, 2017, at which time Petitioner admitted to the controlled substance conviction, but denied the aggravated felony charge.  (Dkt. No. 9 ¶ 19.)  IJ Olmanson

held an additional hearing, and Petitioner moved (unopposed) to continue the hearing for a few weeks because his spouse would be unable to testify because her father was hospitalized in a different state.  (Dkt. No. 9-1, Ex. 12, Mot. at 2-3.)

On December 28, 2017, IJ Olmanson issued an order in which she agreed that the aggravated felony charge did not exceed $10,000 and thus did not sustain that factual allegation.  (Dkt. No. 1-2, Ex. I, IJ Order at 2-3.)  IJ Olmanson further ordered cancellation of Petitioner's removal based on a weighing of discretionary factors under the Immigration and Nationality Act ("INA") § 240A(a).  (*Id.* at 4-12.)  Alternatively, IJ Olmanson determined that Petitioner would be entitled to asylum or for withholding of removal to Somalia.  (*Id.* at 12-13.)

The Government timely appealed the IJ's Order to the Board of Immigration Appeals ("BIA").  (Dkt. No. 1-2, Ex. J.)  On May 31, 2018, the BIA sustained the Government's appeal and remanded the case to the IJ, finding that the IJ erred in her weighing of the discretionary factors.  (Dkt. No. 1-2, Ex. M, BIA Order at 2.)  The BIA ordered the IJ to reevaluate Petitioner's eligibility for asylum and withholding of removal and also to consider whether Petitioner is eligible for protection under the Convention Against Torture ("CAT").  (*Id.* at 4-5.)

On remand, a hearing before the IJ was held on August 23, 2018.  (Dkt. No. 1-2, Ex. N; Dkt. No. 9 ¶ 25.)  IJ Olmanson issued an order on September 28, 2018 denying Petitioner's application for asylum and application for relief under CAT, but granting Petitioner's application for withholding of removal.  (Dkt. No. 9-1, Ex. 14, IJ Order at 14-15.)  The Government appealed the September 28, 2018 decision on October 17,

4

2018.  (Dkt. No. 9-1, Ex. 15.)  As of November 23, 2018, the appeal was still pending.  (*See* Dkt. No. 10 at 3.)  The Court has not been made of aware of any BIA decision in that appeal.

## II.    LEGAL STANDARD

### A.    Detention under Habeas Corpus

"Writs of habeas corpus may be granted by the Supreme Court, . . . the district courts and any circuit judge within their respective jurisdictions."  28 U.S.C. § 2241(a).  "The writ of habeas corpus shall not extend to a prisoner unless . . . [h]e is in custody in violation of the Constitution or laws or treaties of the United States."  *Id.* § 2241(c)(3).  Congress has imposed statutory limits on habeas corpus petitions in immigration proceedings.  For example, a petition for review from an order of removal cannot be brought under the habeas statute and must go directly to the circuit courts of appeals.  *See* 8 U.S.C. § 1252(a)(5).  While § 2241 confers jurisdiction upon federal courts to hear habeas challenges to the lawfulness of immigration-related detentions, *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001), judicial review of detention decisions made under 8 U.S.C. § 1226 is limited by the following provision:

> The Attorney General's discretionary judgment regarding the application of this section shall not be subject to review.  No court may set aside any action or decision by the Attorney General under this section regarding the detention or release of any alien or the grant, revocation, or denial of bond or parole.

*Id.* § 1226(e); *see also Demore v. Kim*, 538 U.S. 510, 517 (2003).  However, the Supreme Court has determined that § 1226(e) does not bar a constitutional challenge to the length of pre-removal detention.  *See Demore*, 538 U.S. at 517; *Zadvydas*, 533 U.S. at 688; *see*

5

*also Davies v. Tritten*, No. 17-cv-3710 (SRN/SER), 2017 WL 4277145, at *2 (D. Minn. Sept. 25, 2017).

**B.    Detention of Aliens under 8 U.S.C. § 1226(c)**

INS detained Petitioner pursuant to 8 U.S.C. § 1226(c) because he was charged with removability based on a conviction which ICE contended qualifies as an aggravated felony.  *See* 8 U.S.C. § 1226(c)(1)(B), (C).  Under § 1226(c)(2):

> The Attorney General may release an alien described in paragraph (1) only if the Attorney General decides pursuant to section 3521 of Title 18 that release of the alien from custody is necessary to provide protection to a witness, a potential witness, a person cooperating with an investigation into major criminal activity, or an immediate family member or close associate of a witness, potential witness, or person cooperating with such an investigation, and the alien satisfies the Attorney General that the alien will not pose a danger to the safety of other persons or of property and is likely to appear for any scheduled proceeding.

8 U.S.C. § 1226(c)(2).

Section "1226(c) *mandates* detention of any alien falling within its scope and that detention may end prior to the conclusion of removal proceedings 'only if' the alien is released for witness-protection purposes."  *Jennings v. Rodriguez*, 138 S. Ct. 830, 847 (2018) (emphasis added).

Regardless of the language of § 1226(c) requiring mandatory detention of aliens, the Fifth Amendment's Due Process Clause forbids the Government from "depriv[ing]" any "person . . . of . . . liberty . . . without due process of law."  U.S. Const. amend. V. "[T]he Fifth Amendment entitles aliens to due process of law in deportation proceedings."  *Reno v. Flores*, 507 U.S. 292, 306 (1993).  The Supreme Court has emphasized that "[f]reedom from imprisonment — from government custody, detention,

6

or other forms of physical restraint — lies at the heart of the liberty that Clause protects." *Zadvydas*, 533 U.S. at 690. Indeed, the United States Supreme Court has affirmed that "[a] statute permitting indefinite detention of an alien would raise a serious constitutional problem." *Id.*; *see generally*, *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992) (holding that, in order to justify continued confinement of a mentally ill person after a not-guilty-by-reason-of-insanity verdict for the purposes of due process, a state bears the burden of showing "by clear and convincing evidence that the individual is mentally ill and dangerous") (internal quotation marks omitted).

In *Zadvydas*, the Supreme Court examined a different statute, 8 U.S.C. § 1231(a)(6), which provides that certain aliens who have been ordered to be removed may be detained "beyond the removal period and, if released, shall be subject to [certain] terms of supervision." The Court rejected a literal reading of 8 U.S.C. § 1231(a)(6), expressing concern that detention under § 1231(a)(6), which often occurs when the Department of Homeland Security has difficulty finding placement for an alien abroad, could become indefinite. 533 U.S. at 682. The Court noted "the serious constitutional problem arising out of a statute that, in these circumstances, permits an indefinite, perhaps permanent, deprivation of human liberty without any such protection is obvious." *Id.* at 692. The Court concluded that in order to avoid this possible constitutional problem, detention pursuant to § 1231(a)(6) is presumed reasonable for six months. *Id.* at 701. Continued detention after six months is unlawful if (1) an alien shows that there is no significant likelihood of removal in the reasonably foreseeable future and (2) the government is unable to rebut this showing with evidence. *Id.* at 701.

7

In *Demore*, the Supreme Court subsequently held that the mandatory detention of an alien under § 1226(c) was a constitutionally permissible part of the removal process for the "limited period" required to complete the removal proceedings. 538 U.S. at 531. The *Demore* Court distinguished its decision in *Zadvydas* where it held that an alien subject to a final order of removal could not be indefinitely detained pursuant to 8 U.S.C. § 1231, the statute that pertains to the detention of aliens ordered removed. *Id.* at 527-30. First, the Court emphasized that detention under § 1226(c) served the purpose of preventing deportable criminal aliens from fleeing prior to or during their removal proceedings. *Id.* at 528. More importantly, the Supreme Court noted that aliens detained under § 1226(c) spend an average of forty-seven days in government custody pending the conclusion of removal proceedings and an average of four months in custody if they appeal, a period just under six months. *Id.* at 529. According to the Court in *Demore*, this "limited period" of detention during removal proceedings was "a constitutionally permissible part of the process." *Id.* at 530. Justice Kennedy in his concurrence found that while 1226(s) is not *per se* unconstitutional, "were there to be an unreasonable delay by the [government] in pursuing and completing deportation proceedings, it could become necessary then to inquire whether the detention is not to facilitate deportation, or to protect against risk of flight or dangerousness, but to incarcerate for other reasons." *Id.* at 532-33 (Kennedy, J., concurring).

Subsequently, the Supreme Court in *Jennings*, *supra*, called into question whether due process requires a six-month bright-line limitation on the detention of aliens under § 1226(c). The Court reversed the Ninth Circuit's holding that noncitizens detained under

8 U.S.C. §§ 1225(b)(1), (b)(2), and 1226(c) were entitled to bond hearings every six months.  *See Jennings*, 138 S. Ct. at 839, 842.  The Court held that the plain language of 1226(c) was unambiguous and "makes clear that detention of aliens within its scope *must* continue 'pending a decision on whether the alien is to be removed from the United States.'"  *Id.* at 846 (emphasis in original); *see also Borbot v. Warden Hudson Cty. Corr. Facility*, No. 17-2814, 2018 WL 4997934, at *3 (3d Cir. Oct. 16, 2018) ("By its terms, § 1226(c) does not entitle detainees to a bond hearing.").

However, the Court in *Jennings* declined to reach the issue of whether prolonged detention under §1226(c) is at a certain point unconstitutional.  *Id.* at 851 ("Because the Court of Appeals erroneously concluded that periodic bond hearings are required under the immigration provisions at issue here, it had no occasion to consider respondents' constitutional arguments on their merits . . . . [W]e remand the case to the Court of Appeals to consider them in the first instance."); *see also Borbot*, 2018 WL 4997934, at *4 ("*Jennings* did not call into question our constitutional holding . . . that detention under § 1226(c) may violate due process if unreasonably long.").

While the Eighth Circuit has not addressed detention under § 1226(c) after *Jennings*, courts in this District have addressed due process challenges to prolonged detention under § 1226(c) and have concluded that the Due Process Clause imposes a limitation on the length of § 1226(c) detention.  These courts have concluded that a due process challenge to § 1226(c) detention must be resolved by closely examining the facts of the particular case to determine whether the detention is reasonable.  *See*, *e.g.*, *Muse v. Sessions*, No. 18-cv-0054 (PJS/LIB), 2018 WL 4466052, at *3 (D. Minn. Sep. 18, 2018);

9

*Mohamed v. Sec'y, Dep't of Homeland Sec.*, No. 17-cv-5055 (DWF/DTS), 2018 WL 2392205, at *5 (D. Minn. Mar. 26, 2018), *R. & R. adopted*, 2018 WL 2390132 (D. Minn. May 25, 2018).

U.S. District Judge Patrick J. Schiltz, in his survey of post-*Jennings* caselaw, noted that courts using a fact-specific inquiry in the context of detention under § 1226(c) have examined several factors to guide them in identifying when "continued detention becomes unreasonable and the Executive Branch's implementation of § 1226(c) becomes unconstitutional unless the Government has justified its actions at a hearing inquiring into whether continued detention is consistent with the law's purposes of preventing flight and dangers to the community." *Muse*, 2018 WL 4466052, at *3 (marks and citation omitted). These factors include: (1) the total length of detention to date, (2) the likely duration of future detention, (3) the conditions of detention, (4) delays of the removal proceedings caused by the detainee, (5) delays of the removal proceedings caused by the government, and (6) the likelihood that the removal proceedings will result in a final order of removal. *Id.* (citing *Reid v. Donelan*, 819 F.3d 486 (1st Cir. 2016), *withdrawn*, *Reid v. Donelan*, No. 14-1270, 2018 WL 4000993 (1st Cir. May 11, 2018)). The Government argues that the Court should not apply the *Reid* factors because the First Circuit withdrew its opinion after *Jennings*. (Dkt. No. 8 at 23.) However, the First Circuit affirmed the district court's judgment as to its individualized holding with respect to Reid's habeas corpus petition that the detention had become unreasonable, and therefore he was entitled to a bond hearing. *See Reid*, 2018 WL 4000993, at *1; *Reid*,

819 F.3d at 501.  Likewise, the Court looks only to *Reid*'s analysis of this individualized decision, rather than the withdrawn holding on the general constitutionality of § 1226.

Many courts in this District have followed the *Muse* court's approach to determining when an alien detained under § 1226(c) is entitled to a bond hearing to prevent a possible violation of Petitioner's due process rights.  *See, e.g., Alier D. v. Sec. of Dept. of Homeland Sec.*, 18-cv-01645 (NEB/HB), 2018 WL 5849477 (D. Minn. Sept. 28, 2018), *R&R adopted as modified by*, 2018 WL 5847244, at *3 (D. Minn. Nov. 8, 2018); *Abdulkadir A. v. Sessions*, 18-CV-2353 (NEB/HB), 2018 WL 7048363 (D. Minn. Nov. 13, 2018); *Jamal A. v. Whitaker*, 358 F. Supp. 3d 853 (D. Minn. 2019); *Liban M.J. v. Sec. of Dept. of Homeland Sec.*, 18-CV-1843 (NEB/ECW), 2019 WL 1238834, at *2 (D. Minn. Mar. 18, 2019).  Indeed, a number of courts in other districts (post-*Jennings*) have undertaken an individualized fact-specific inquiry in determining if § 1226(c) detainees are entitled to a hearing inquiring into whether continued detention is consistent with the law's purposes of preventing flight and dangers to the public.  *See, e.g., Cabral v. Decker*, No. 18 CIV. 4823 (JGK), 2018 WL 4521199, at *4-5 (S.D.N.Y. Sept. 21, 2018); *Thompson v. Edwards*, No. CV 18-1006 (ES), 2018 WL 4442225, at *4 (D.N.J. Sept. 17, 2018) (granting habeas relief concluding that the petitioner's 26-month detention was unreasonable under the facts presented); *Vega v. Doll*, No. CV 3:17-1440, 2018 WL 3756755, at *4 (M.D. Pa. Aug. 8, 2018); *Dryden v. Green*, 321 F. Supp. 3d 496, 502 (D.N.J. 2018); *Sajous v. Decker*, 18-CV-2447 (AJN), 2018 WL 2357266, at *10 (S.D.N.Y. May 23, 2018) ("Rather than employ a brightline rule, the Court concludes that whether mandatory detention under § 1226(c) has become 'unreasonable,' and thus a

due process violation, must be decided using an as-applied, fact-based analysis"

"requiring an assessment of all the circumstances of any given case."); *Obando-Segura v.*
*Whitaker*, CV GLR-17-3190, 2019 WL 423412, at *5 (D. Md. Feb. 1, 2019).  The Court

agrees with the approach taken in *Muse* and the many other courts to follow suit and will

apply the reasonableness factors to determine if Petitioner is entitled to a bond hearing.

### III.   ANALYSIS

The first and most important factor that courts analyze when determining whether

an alien detained under § 1226(c) is entitled to a bond hearing is the length of the

detention to date.  *See Muse*, 2018 WL 4466052, at *4 ("How long this deprivation has

lasted is critical to the due-process inquiry.").  Petitioner has been detained since June 8,

2017 (Dkt. No. 9 ¶ 26), meaning he has now been held without a bond hearing for

approximately 23 months.  The entirety of the 23-month custody has been pursuant to §

1226(c) because his removal proceedings were reopened in July 2016, before he was

taken into immigration custody.[3]  *See Nyonton v. Brackett*, 18-cv-481 (PB), 2019 WL

1082203, at *1 (D.N.H. Mar. 7, 2019) (noting that granting of motion to reopen removal

proceedings shifted the statutory basis of petitioner's detention to § 1226(c)).

The 23-month detention is "considerably longer than the 'brief' period assumed

in *Demore*."  *Alier D., Petr., v. Sec. of Dept. of Homeland Security*, 18-CV-01645

(NEB/HB), 2018 WL 5849477, at *6 (D. Minn. Sept. 28, 2018); *Jamal A.*, 358 F. Supp.

---

[3]     The Government does not dispute that the detention period is pre-removal
detention under § 1226(c).  (*See* Dkt. No. 8 at 14 (describing detention at issue here as
"*pre-removal-order* detention").)

3d at 859 (finding that over 19 months in custody "strongly favors granting [petitioner] a bond hearing"). Indeed, the reasoning of both *Demore* and *Jennings* is predicated on the detention under § 1226(c) being "brief" and having a "definite termination point." *Demore*, 538 U.S. at 531 (noting the "limited period" of detention); *Jennings*, 138 S. Ct. 830, 846 (2018) (noting the "definite termination point"). This 23-month detention is well within the range courts have found sufficient to require a bond hearing under the Due Process Clause. *See, e.g.*, *Cabral v. Decker*, No. 18 CIV. 4823 (JGK), 2018 WL 4521199, at *5 (S.D.N.Y. Sept. 21, 2018) (seven months); *Liban M.J.*, 2019 WL 1238834, at *3 (12 months); *Thomas C.A. v. Green*, No. 18-1004, 2018 WL 4110941, at *5-6 (D.N.J. Aug. 29, 2018) (fifteen months); *Portillo v. Hott*, 322 F. Supp. 3d 698, 707 (E.D. Va. 2018) (fourteen months); *Sajous*, 2018 WL 2357266, at *1, *7 (eight months); *Mohamed*, 2018 WL 2390132 at *1 (fifteen months); *Jamal A.*, 358 F. Supp. 3d at 859 (nineteen months). "As detention continues past a year, courts become extremely wary of permitting continued custody absent a bond hearing." *Muse*, 2018 WL 4466052, at *4. This factor strongly weighs in favor of granting relief.

The second factor is the likely duration of future detention in the absence of judicial relief. *Muse*, 2018 WL 4466052, at *4. In estimating when detention will end, courts take into account the anticipated duration of all removal proceedings, including administrative and judicial appeals. *Id.* (citing *Ly v. Hansen*, 351 F.3d 263, 272 (6th Cir. 2003) ("The entire process, not merely the original deportation hearing, is subject to the constitutional requirement of reasonability.")). The Government appealed to the BIA on October 17, 2018, and neither party has apprised the Court of any decision issued by the

13

BIA. The remainder of the BIA appeal will take additional time, and may be followed by an appeal to the Eighth Circuit, which could take several months. Accordingly, this factor weighs in Petitioner's favor.

The third factor is the conditions of the petitioner's detention.[4] Aliens detained under § 1226(c) are subject to civil detention rather than criminal incarceration. *See Muse*, 2018 WL 4466052, at *4 (citation omitted). Petitioner is held at the Sherburne County Jail (Dkt. No. 1 ¶ 10), presumably alongside criminal defendants. The Court cannot ignore the fact that deprivation to liberties caused by civil detention brought about by § 1226(c) is not meaningfully differentiated from incarceration. *See Guerrero-Sanchez v. Warden York Cty. Prison*, 905 F.3d 208, 220 n.9 (3d Cir. 2018) (citing *Chavez-Alvarez v. Warden York County Prison*, 783 F.3d 469, 478 (3d Cir. 2015)); *Muse*, 2018 WL 4466052, at *5 ("The more that the conditions under which the alien is being held resemble penal confinement, the stronger his argument that he is entitled to a bond hearing."). As the length of the detention grows, the weight given to this aspect of his detention increases. *Id.* This factor therefore weighs in Petitioner's favor.

The fourth factor is whether there have been any delays of the removal proceedings caused by the detainee. *See Muse*, 2018 WL 4466052, at *5-6. The

---

[4]    As noted by the Government (Dkt. No. 8 at 26), some courts compare the immigration detention to the criminal sentence. The *Muse* court found this comparison not particularly helpful because "Section 1226(c) detention and criminal incarceration are different types of custody imposed for different reasons by different sovereigns." *Muse*, 2018 WL 4466052, at *3, n.3. In any case, Petitioner's 23 months in immigration custody is longer than the 364-day sentence he received for Petitioner's insurance fraud conviction.

Government identifies two delays caused by Petitioner—one caused by Petitioner's applications for relief not being properly filled out, which resulted in a delay from September 21, 2017 to November 2, 2017, and the second caused by Petitioner's motion for a continuance of the November 2, 2017 hearing until November 30, 2017 because Petitioner's wife was in Seattle with her terminally ill father and therefore unavailable for the November 2 hearing.[5]  (Dkt. No. 8 at 25; *see also* Dkt. No. 9 ¶¶ 20-21; Dkt. No. 9-1, Ex. 12 (motion for continuance and doctor's letter).)  Notwithstanding these delays, the Court does not find that Petitioner engaged in any dilatory tactics.  Accordingly, this factor weighs in Petitioner's favor.

The fifth factor is whether there have been any delays of the removal proceedings caused by the Government.  *See Muse*, 2018 WL 4466052, at *6.  Although the Government has twice appealed the IJ's decisions, the Court is not aware of any undue delay caused by the government.  Like Petitioner's right to file motions, the Government is permitted to make arguments and appeals in support of its position.  Accordingly, this factor weighs in favor of the Government.

The sixth and final factor is the likelihood that the removal proceedings will result in a final order of removal.  "Higher likelihood of the alien's removal means longer periods of detention may be reasonable."  *Alier D., Petr.*, 2018 WL 5849477, at *7.  Although the IJ has twice ordered Petitioner's removal be cancelled or withheld, the matter is currently on appeal before the BIA, which previously sustained the

---

[5]    In any event, these two delays amounted to only 70 of the roughly 690 days that Petitioner has been delayed.

Government's appeal.  The Court is not in a position to weigh the merits of the removal order, and therefore finds this factor neutral.

In sum, the Court finds that four factors weigh in Petitioner's favor, one factor weighs in the Government's favor, and one is neutral.  Based on this individualized fact-specific inquiry of Petitioner's detention, the Court concludes that continued detention of Petitioner without a bond hearing would deprive him of his right to due process under the Fifth Amendment.  A bond hearing at which the parties may present evidence and argument concerning whether Petitioner is a danger to the community or likely to flee if not detained "will protect both [Petitioner's] rights under the Due Process Clause and the government's legitimate interest in detaining a removable alien when such detention is necessary to serve the purposes of § 1226(c)."  *Muse*, 2018 WL 4466052 at *6.  While the Court does not recommend Petitioner's immediate release, it recommends that the IJ be ordered to conduct a bond hearing within 30 days after the adoption of this Report and Recommendation.

## IV.  <u>RECOMMENDATION</u>

Based on the above, and on the files, records, and proceedings herein, **IT IS RECOMMENDED** that Petitioner's Petition for Writ of Habeas Corpus (Dkt. No. 1) be **GRANTED** in part and **DENIED** in part as follows:

1.      Petitioner's request for immediate release be **DENIED**.

2.      To the extent that the District Court adopts this Report and Recommendation, an immigration judge should provide Petitioner with a bond hearing within thirty days of the District Court's order.  At the bond hearing, the immigration

16

judge should make an individualized determination whether Petitioner's continued

detention is necessary to protect the public or to prevent Petitioner from fleeing during

the pendency of immigration proceedings.


DATED: May 6, 2019                                    *s/Elizabeth Cowan Wright*
                                                      ELIZABETH COWAN WRIGHT
                                                      United States Magistrate Judge



## NOTICE

This Report and Recommendation is not an order or judgment of the District Court and is
therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under District of Minnesota Local Rule 72.2(b)(1), "a party may file and serve specific
written objections to a magistrate judge's proposed finding and recommendations within
14 days after being served a copy" of the Report and Recommendation. A party may
respond to those objections within 14 days after being served a copy of the objections. D.
Minn. LR 72.2(b)(2). All objections and responses must comply with the word or line
limits set for in D. Minn. LR 72.2(c).